**WYOMING TRUCKING ASSOCIATION, INC.; Fleischli Oil Company, Inc.; Black Hills Trucking, Inc., Plaintiffs–Appellants,**

v.

**Lloyd BENTSEN, in his official capacity as Secretary of the U.S. Department of Treasury; Margaret Milner Richardson, in her official capacity as Commissioner of the Internal Revenue Service, Department of the Treasury; United States of America, Defendants–Appellees.**

No. 95–8043.

United States Court of Appeals, Tenth Circuit.

April 15, 1996.

William Perry Pendley (Paul M. Seby with him on the briefs), Mountain States Legal Foundation, Denver, Colorado, appearing for the Appellants.

Frank P. Cihlar (Ann P. Durney with him on the briefs), Attorneys, Tax Division, Department of Justice, Washington, DC, appearing for the Appellees.

Before TACHA, BRORBY, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

After careful review of the record, we adopt the analysis in the district court's Order Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendants' Motion to Dismiss. We therefore AFFIRM for substantially the reasons given by the district court and ORDER the district court's order to be published.

### Attachment

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING

Wyoming Trucking Association, Inc.;
Fleischli Oil Company; and Black
Hills Trucking, Inc.; Plaintiffs,

v.

Lloyd Bentsen, Secretary of the Treasury;
Margaret Milner Richardson, Commissioner of the Internal Revenue Service;
and United States of America; Defendants.

NO. 94–CV–0107–B

### *ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION TO DISMISS*

The above-entitled matters having come before the Court upon Defendants' Motion to Dismiss and Plaintiffs' Motion for Partial Summary Judgment, and the Court having reviewed the materials on file herein, having

heard the oral arguments of the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

## Background

This action centers on the constitutional validity of certain provisions enacted as part of the Omnibus Budget Reconciliation Act of 1993. Plaintiff Wyoming Trucking Association ("WTA") is a nonprofit corporation composed of over 40 Wyoming trucking companies who pay tax on gasoline and diesel fuels. WTA is joined in this action by two of its members, Fleischli Oil, a petroleum distributor, and Black Hills Trucking, an interstate common carrier.

Plaintiffs challenge the Transportation Fuels Tax, which imposed a 4.3 cents per gallon federal excise tax on gasoline and diesel fuel. Plaintiffs argue that the United States Congress enacted the Transportation Fuels Tax in violation of their rights under Article 1, Section 7, Clause 1 of the Constitution (the Origination Clause) [1], and the Takings Clause of the Fifth Amendment. The plaintiffs accordingly request a declaration that the Transportation Fuels Tax is unconstitutional, as well as an injunction restraining the assessment and collection of the tax. Finally, plaintiffs request a refund of the taxes it has already paid as a result of the allegedly illegal tax.

Defendants are the United States and representatives of the United States Government, specifically, Lloyd Bentsen as Secretary of the Treasury and Margaret Milner Richardson as Commissioner of the Internal Revenue Service. Defendants have filed a motion to dismiss, arguing *inter alia* that the plaintiffs' claims are barred by the Anti–Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The plaintiffs have responded to the defendants' motion and have simultaneously moved for partial summary judgment.

As discussed below, the Court finds that the plaintiffs' claims are excluded from its jurisdiction by the terms of both the Anti-injunction Act and the Declaratory Judgment Act. Accordingly, the plaintiffs' action must be dismissed.

## The Transportation Fuels Tax

On May 27, 1993, The United States House of Representatives passed House Resolution 2264. As it emerged from the House, H.R. 2264 had numerous Titles, only one of which was enacted pursuant to the power of Congress to lay and collect taxes. That Title provided for a comprehensive energy excise tax on all fuels, including petroleum products, measured by BTU content. One month later, the United Stated Senate passed H.R. 2264. The Senate, however, rejected the proposed tax based on BTU content and replaced it with an increase in the Transportation Fuels Tax. On July 14, 1993, H.R. 2264 was sent to a House–Senate Conference Committee for reconciliation. Two weeks later, the Conference Committee agreed to include the 4.3 cent fuel tax. Both the House and the Senate later passed H.R. 2264 and on August 10, 1993, President Clinton signed it into law. The transportation fuels tax took effect on October 1, 1993.

The plaintiffs contend that the Transportation Fuels Tax was a revenue raising provision which originated not in the House, as required by the Constitution, but in the Senate. The plaintiffs accordingly argue that the Transportation Fuels Tax is an illegal tax which this Court should enjoin.

## Discussion

### The Anti–Injunction Act and the Declaratory Judgment Act

The Anti–Injunction Act, 26 U.S.C. § 7421, states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." Similarly, the Declaratory Judgment Act, 28 U.S.C. 2201, prohibits a court from declaring the rights of litigating parties

1. Article I Section 7 of the Constitution provides: "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills". The plaintiffs also contend that the Transportation Fuels Tax was not an amendment germane to any revenue raising bill that originated in the House.

with respect to federal taxes. The reach of these two statutes is coextensive, with the Declaratory Judgment Act "reaffirming the restrictions set out in the Anti–Injunction Act." *Bob Jones University v. Simon*, 416 U.S. 725, 733 n. 7, 94 S.Ct. 2038, 2044 n. 7, 40 L.Ed.2d 496 (1974). *See also Perlowin v. Sassi*, 711 F.2d 910, 911 (9th Cir.1983). This approach is consistent with common sense, since an injunction of a tax and a judicial declaration that a tax is illegal have the same prohibitory effect on the federal government's ability to assess and collect taxes. Since the Declaratory Judgment Act is "at least as broad as the Anti–Injunction Act", *Bob Jones*, 416 U.S. at 733 n. 7, 94 S.Ct. at 2044 n. 7, the Court will focus its discussion on the Anti–Injunction Act, with the intention of applying the same reasoning to the Declaratory Judgment Act.

■ The Supreme Court has recognized that the principal purpose of the Anti–Injunction Act is to permit the government to assess and collect taxes expeditiously without judicial intervention, and to require that the legal right to taxes withheld be determined in a suit for a refund. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1961), *Egbert v. U.S.*, 752 F.Supp. 1010, 1015 (D.Wyo. 1990). This broad prohibition of judicial impediment to taxation should not, however, be interpreted to give the Government *carte blanche* in the creation or assessment of taxes. Such omnipotence would potentially allow the government to work all manner of legal deprivation under the guise of its power to tax. *See Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422 (1931). The Anti–Injunction Act is necessarily counterpoised in two ways: first, all taxpayers have the right to challenge a tax by filing a claim for a refund with the Internal Revenue Service, and in the event this fails, by commencing a suit for refund. 26 U.S.C. § 7422; second, the Supreme Court has recognized a two-tiered exception to the Anti–Injunction Act. *Enochs v. Williams Packing & Navigation*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1961). The *Williams Packing* test allows an injunction

of a tax where (1) it is clear that under no circumstances could the government ultimately prevail, and (2), equity jurisdiction would otherwise exist. *Alexander v. Americans United Inc.*, 416 U.S. 752, 758, 94 S.Ct. 2053, 2057, 40 L.Ed.2d 518 (1974), *citing Williams Packing*.

*Does the Anti–Injunction Act/Declaratory Judgment Act apply to a claim brought under the Origination Clause?*

■ Plaintiffs' threshold defense to the Anti–Injunction Act and the Declaratory Judgment Act argument is that this is not a civil suit for a tax refund, but a facial challenge to the constitutionality of the transportation fuels tax. Of course, plaintiffs' decision to characterize their claim as a non-tax suit does not necessarily make it so. Of critical importance to this Court is the fact that the relief sought by the plaintiffs would have the immediate effect of restraining the collection of a tax in direct contradiction to the Anti–Injunction Act. Ignoring the Anti–Injunction Act simply because a plaintiff characterizes his claim as a constitutional question would elevate semantics over substance, and such a tactic would quickly become the method of choice for avoidance of the Anti–Injunction Act. By simply dressing a tax refund claim in the raiment of a constitutional question, any plaintiff could seek declaratory and injunctive relief to a multitude of federal taxes. The Anti–Injunction Act and the Declaratory Judgment Act would swiftly erode into oblivion. Perhaps the Supreme Court envisioned this when it stated: "decisions of [the Supreme] Court make it unmistakably clear that the constitutional nature of the taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti–Injunction Act." *Alexander v. Americans United Inc.*, 416 U.S. 752, 759, 94 S.Ct. 2053, 2058, 40 L.Ed.2d 518 (1974).

Despite the clear authority of *Alexander*, plaintiffs also argue that neither the Anti–Injunction Act nor the Declaratory Judgment Act apply in situations where, as here, Congress has violated the express procedural

requirements of the Origination Clause.[2] Plaintiffs cite no authority for this stark conclusion which apparently attempts to distinguish Origination Clause claims from all other claims based on the constitution. Indeed, legal authority is exactly to the contrary: basing a tax claim on a violation of the Origination Clause provides no special immunity from the reach of the Anti–Injunction Act. *See, e.g., Graham v. United States,* 573 F.Supp. 848 (E.D.Pa.1983) (suit alleging that Tax Equity and Fiscal Responsibility Act constituted a violation of the Origination Clause barred by the Anti–Injunction Act); *Paul v. Executive Branch of the Union,* 83–2 Tax Cas. (CCH) P9446, 52 A.F.T.R.2d (P–H) 5669, 1983 WL 1624 (W.D.Wis.1983) (suit seeking declaration that Tax Equity and Fiscal Responsibility Act constituted violation of the Origination Clause barred by the Anti–Injunction Act.)

Having concluded that the plaintiffs' claims are barred by the clear language of the Anti–Injunction Act, the Court now examines whether the plaintiffs' claims qualify for the exceptions to the Act under *Williams Packing,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1961).

*The Williams Packing Test*

■■■ The *Williams Packing* test provides an exception to the Anti–Injunction Act in cases where the government acts illegally, under the shroud of its sweeping power, to lay and collect taxes. In order to find such an abuse of power while also giving due deference to the government's legitimate power to raise revenue, a court must, after considering a plaintiff's contentions and the government's responses thereto, determine that under no circumstances could the government prevail in its defense of the challenged action. *Williams Packing,* 370 U.S. at 7, 82 S.Ct. at 1129. In the instant case, the question thus becomes: is it clear that the government will under no circumstances

prevail in its argument that the Transportation Fuels Tax did not violate the Origination Clause?

The primary source of authority which controls under the facts of the instant case is *Flint v. Stone Tracy Co.,* 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911). In *Flint,* the plaintiff alleged a violation of the Origination Clause when the Senate substituted a corporate tax for the inheritance tax which the Bill had contained as it emerged from the House. As in the instant case, the Senate completely removed a portion of the Bill and substituted its own revenue raising provision. The Court held:

> The Bill having properly originated in the House, we perceive no reason in the constitutional provision relied upon why it may not be amended in the Senate in the manner which it was in this case. The amendment was germane to the subject matter of the Bill and not beyond the power of the Senate to propose.

*Id.* at 143, 31 S.Ct. at 346.

Here, the plaintiffs admit that one of the Titles of H.R. 2264 as it originated in the House involved the raising of revenue, and that this Title included in its provisions a comprehensive energy excise tax on all fuels. However, the plaintiffs argue that the Transportation Fuels Tax imposed by the Senate was not an amendment of H.R. 2264, but an amendment of an already existing law. The plaintiffs accordingly argue that the Transportation Fuels Tax was not an amendment germane to the revenue raising provision of H.R. 2264 as it originated in the House.

Initially, the Court notes the elevated hurdle that the plaintiffs must cross in order to prevail on the first prong of the *Williams Packing Test:* they must demonstrate that under *no circumstances* could the government prevail in its defense of the tax, or in other words, that the governments' position is without legal foundation.[3] In light of this

---

**2.** Plaintiffs state: "the AIA [Anti–Injunction Act] and the DJA [Declaratory Judgment Act] do not apply in situations where, as here, Congress has violated the express procedural requirements of the Origination Clause." Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, p. 17.

**3.** As to this standard, this Court has stated: "A federal district court may consider an injunction ... only when the taxpayer first establishes ... that under the most liberal view of the law and the facts, the United States cannot establish its claim." *Egbert v. U.S.,* 752 F.Supp. 1010, 1016

rigorous standard, the plaintiffs have simply failed to distinguish the Supreme Court's ruling in *Flint* sufficiently to establish that the government's position is without legal foundation. This Court sees little difference between the Senate's substitution of a corporate tax for an inheritance tax in *Flint* and its substitution of a transportation fuel tax for a comprehensive energy tax in the instant case, even if it was an amendment of an existing law. The plaintiffs have presented an articulate argument to the contrary, but the Court is convinced that under the train of thought of *Flint*, the Transportation Fuels Tax was germane to the subject matter of the revenue raising component of H.R. 2264 as it originated in the House.[4] The obvious purpose of the comprehensive energy tax based on BTUs was to raise revenue by taxing a number of different fuels. The obvious purpose of the Transportation Fuels Tax was to raise revenue by taxing a more limited range of fuels. The latter is at least as germane to the former as a corporate tax is to an inheritance tax. The plaintiffs' Origination Clause claim does not satisfy the first prong of the *Williams Packing* test and is thus barred by the Anti–Injunction Act.

While not necessary to this holding, the Court notes that the plaintiffs' claim also fails the second prong of *Williams Packing*, which, where the first prong is met, allows a court jurisdiction if equity jurisdiction would otherwise exist. The fact is that the plaintiffs have an adequate remedy at law via a tax suit filed in accordance with I.R.S. procedures, and that prevents equity jurisdiction in this case. *See Bob Jones University v. Simon*, 416 U.S. 725, 746, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496 (1974). A tax suit clearly constitutes a "full, albeit it delayed" opportunity to litigate the issues which the plaintiffs have presented to this Court. *Id.*

### Conclusion

Because the Court finds that the plaintiffs' suit has the effect of restraining the assessment or collection of a tax and also seeks a declaration as to the rights of litigating parties with respect to federal taxes, the Court finds that jurisdiction is barred by both the Anti–Injunction Act and the Declaratory Judgment Act. The Court also finds that the plaintiffs' claim does not qualify for the exceptions to the Anti–Injunction Act established under *Williams' Packing*. Accordingly, this Court lacks subject matter jurisdiction and the plaintiffs' complaint must be **DISMISSED**.

**THEREFORE**, it is

**ORDERED** that the plaintiffs' complaint be, and the same hereby is, **DISMISSED** for lack of subject matter jurisdiction.

Dated this 7th day of February, 1995.

/s/ Clarence A. Brimmer, Jr.
UNITED STATES DISTRICT JUDGE

---

(D.Wyo.1990), *citing Williams Packing*, 370 U.S. at 6–7, 82 S.Ct. at 1128–29.

**4.** Webster's Third New International Dictionary (Unabridged) (1971) defines germane as "closely akin" or "having a close relationship."